# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA ACEVEDO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. ED CV 17-00775 AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issue. For the following reasons, the Commissioner's decision is affirmed.

## BACKGROUND

In February 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she became disabled and unable to work on June 1, 2007. Plaintiff's claims were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") conducted a hearing on

May 4, 2015, at which Plaintiff, her attorney, and a vocational expert were present. (Administrative Record ("AR") 115-137.) In a July 14, 2015 written decision that constitutes the Commissioner's final decision, the ALJ found that Plaintiff suffered from the following severe impairments: morbid obesity; diabetes mellitus; degenerative joint disease; and renal insufficiency. (AR 103.) Nevertheless, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of sedentary work. After concluding that Plaintiff's RFC did not preclude her from performing jobs that exist in significant numbers in the national economy, the ALJ found Plaintiff not disabled at any time from June 1, 2007 through the date of the ALJ's decision. (AR 101-110.)

**DISPUTED ISSUE**

The sole disputed issue is whether the ALJ properly evaluated Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting her subjective testimony about her symptoms and limitations. (ECF

No. 21 at 4). Plaintiff's claim is based upon statements included in her March 2013 function report as well as her testimony at the hearing.

According to Plaintiff's function report, Plaintiff stayed in her pajamas all day unless she had to go somewhere. Plaintiff bathed once a month for fear of falling; could walk less than a block without needing to rest; was unable to stand "for a long period of time"; and needed reminders to take her medication. (AR 326-328, 331.) Plaintiff reported experiencing difficulty lifting, squatting, bending, reaching, walking, kneeling, stair climbing and completing tasks. (AR 331.) Plaintiff was able to do laundry once a week. (AR 328.) At the time she completed the form (2013), Plaintiff took care of her two grandchildren while her daughter worked. As part of this job, Plaintiff drove one granddaughter to and from preschool. (AR 327.)

At the hearing, Plaintiff testified that her days consisted of waking up, going to the living room to watch TV, then going back to sleep. She never walked outside because she was afraid of falling. She spent all day lying down because it was the most comfortable position. (AR 128-130.) Plaintiff was able to dress and groom herself, but it took "a while." (AR 131.) She was unable to grocery shop or do errands. (AR 129.) Plaintiff testified that she did not drive, but it is not clear whether she attributed this to a physical limitation or to a "financial issue." (AR 131 (Plaintiff's testimony that she did not renew her driver's license because she had unpaid tickets).)

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

3

claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). An ALJ may consider a variety of factors ordinarily used in assessing credibility, including inconsistencies within the claimant's testimony or between the claimant's testimony and the claimant's conduct, the claimant's work record, and information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Here, the ALJ found that Plaintiff suffered from medically determinable impairments that could reasonably be expected to produce Plaintiff's pain or other alleged symptoms, but determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (AR 107.) Nevertheless, the ALJ partially credited Plaintiff's testimony by finding she was able to perform a limited range of sedentary work precluding her past work, rejecting the medical opinions that Plaintiff could perform light or medium work. (AR 106-109.) The ALJ offered the following reasons for his adverse credibility determination.

First, the ALJ found that Plaintiff's subjective testimony was not substantiated by objective medical evidence in the record. (AR 107.) "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 678 (9th Cir. 2005); *see Morgan, v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict

between claimant's testimony of subjective complaints and objective medical evidence in the record); *see also Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999) (ALJ may properly rely on weak objective support for claimant's subjective complaints).

Plaintiff contends that the ALJ "simply cites to most of the exhibit in the file without anything more." (ECF No. 21 at 6.) Contrary to Plaintiff's contention, however, the ALJ cited and discussed specific medical evidence to support his conclusion.

In particular, the ALJ noted that the record contained "little evidence of significant and persistent neurologic deficits" and discussed the results of three different physical examinations – one in February 2013 and two in November 2013. (AR 104.) During her February 2013 exam, Plaintiff had normal gait; normal heel/toe ambulation; no abnormalities of the knee, leg, ankle, or foot; no edema; a full range of motion, intact sensation; negative straight leg raise test; and normal deep tendon reflexes. Plaintiff exhibited tenderness in her back and knees. She reported her back pain as mild and her knee pain as moderate. (AR 490-493.) A complete orthopedic evaluation in November 2013 resulted in similar findings. That is, Plaintiff had normal posture and gait; she did not use an assistive device; she was able to sit comfortably in a chair and to get on and off the exam table without difficulty; she had tenderness, but full range of motion in her spine; negative straight leg raising; her shoulders, elbows, writs, hips, knees, ankles and feet were all normal and with full range of motion; her knees were stable and without abnormality; her strength was 5/5; and her sensation was intact. Dr. Hoang opined that Plaintiff was able to stand or walk six hours in an eight-hour workday, was able to sit six hours in an eight-hour workday, and did not need an assistive device. (AR 519-522.) Finally, during a November 2013 evaluation performed for purposes of physical therapy, Plaintiff exhibited no gait deviation, no signs of muscle atrophy, and her range of motion was within functional limits. (AR 539.)

In addition, the ALJ discussed Plaintiff's two hospitalizations. He noted that Plaintiff was hospitalized for approximately a week in July 2014 for hypovolemic shock, dehydration, and acute renal failure with vomiting and diarrhea. Plaintiff was treated with medications and discharged in stable condition. (AR 653-794.) In November 2014, Plaintiff was hospitalized after complaining of weakness and dizziness. A CT scan of Plaintiff's brain was unremarkable, as was imaging of Plaintiff's chest. (AR 610-611.) Plaintiff was diagnosed with dizziness, hypotension, and mild chronic renal insufficiency. She was stabilized and discharged with directions to follow up with primary care physician. (AR 576-638.)

With regard to Plaintiff's mental health, the ALJ correctly noted that Plaintiff neither sought nor received regular and continuing mental health treatment. Other than prescription medication prescribed by her primary care provider, the record contains few clinical findings suggesting that Plaintiff suffered from more than minimal cognitive or psychological limitations. (AR 105-106.) The ALJ reviewed the report of Dr. Rathana-Nakintara, who performed a complete psychiatric consultative evaluation in April 2013. Dr. Rathana-Nakintara reported that Plaintiff was cooperative and responsive; had appropriate affect and goal directed thoughts; exhibited no psychosis; and performed relatively well on formal memory and concentration testing. (AR 502-504.) Plaintiff reported that she took Celexa and it helped her "not feel depressed." (AR 503.) Dr. Rathana-Nakintara opined that Plaintiff had no intellectual or psychological functional limitations. (AR 505-506.) The ALJ also considered the reports of the state agency psychological consultants who found Plaintiff suffered no severe psychological impairment. (AR 105, 138-149, 176-187.)

With regard to Plaintiff's pelvic, fibroid and cystitis impairments, the ALJ noted Plaintiff's hysterectomy in 2008, and stated that although the surgery "would normally weigh in [Plaintiff]'s favor, it is offset by the fact that the record reflects that the surgery was generally successful in improving those symptoms." (AR 108.)

This conclusion is borne out by the record. (*See* AR 390-411, 496).

Finally, the ALJ observed that no treating physician opined that Plaintiff had the severe limitations she alleged; in fact, no physician opined that Plaintiff was disabled or had limitations greater than those determined in the ALJ's decision. (AR 108.) It was permissible for the ALJ to rely upon the contradiction between Plaintiff's alleged limitations and the medical opinions regarding those limitations. *See Harris v. Berryhill*, 691 F. App'x 338 (9th Cir. 2017).

In support of her argument that the ALJ mischaracterized the medical record, Plaintiff cites two pieces of evidence: a February 2015 X-ray revealing a calcaneal spur and soft tissue swelling in Plaintiff's knee and a single page from the nearly 200-page records from Hemet Valley Medical Center Emergency Department dated August 3, 2014 noting "weak gait; ambulatory aid; and history of falling."[1] (ECF No. 21 at 7 (citing AR 572, 851).) While these records may constitute evidence that Plaintiff suffered from a medically determinable impairment, they do not undermine the ALJ's conclusion that the objective medical evidence did not support the severity of Plaintiff's subjective complaints. The ALJ was not compelled to find that evidence of a weak gait while hospitalized, swelling in the knee, and a calcaneal spur constituted objective medical evidence supporting Plaintiff's testimony that her impairments were so severe that she was unable to stand, walk, or perform almost all work-related activity. In sum, the ALJ's assessment of the objective medical evidence was supported by substantial evidence.

Second, the ALJ discounted Plaintiff's credibility based upon his finding that Plaintiff had "not been entirely compliant in following prescribed treatment, which

---

[1] The Court notes that records from the same hospital stay include apparently inconsistent findings that Plaintiff ambulated independently, had a steady gait, and no limitations or abnormalities in range of motion or strength. (AR 796, 798.) In addition, as set forth above, the record contains numerous other treatment notes and assessments recording Plaintiff's gait as normal. (*See, e.g.,* AR 490-493, 519-522, 635, 1032-1040.)

7

suggests that the symptoms may not have been as limiting as [Plaintiff] alleged." (AR 104, 107.) Specifically, the cited evidence reflects that Plaintiff failed to complete physical therapy: After failing to appear for multiple appointments, Plaintiff was discharged from physical therapy due to "non-adherence." (AR 536.) This was an appropriate basis on which to base a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (an unexplained, or inadequately explained, failure to seek treatment may be the basis for finding a complaint unjustified or exaggerated); *Orn*, 495 F.3d at 638 (same); *Fair*, 885 F.2d at 604 (ALJ may rely on the failure to follow a prescribed course of treatment in making adverse credibility finding).

Third, the ALJ considered Plaintiff's work record, stating:

> [Plaintiff] had a very poor work record long before [she] allegedly became unable to work. In fact, her earnings record shows that she earned less than $10,000 in 2000 and 2003 through 2006 (Exhibit 8D). Her failure to work for years at her full capacity when she could have done so reflects poorly on her motivation for gainful employment regardless of any alleged limitations.
>
> * * *
>
> There is evidence that [Plaintiff] stopped working for reasons not related to the allegedly disabling impairments. [Plaintiff] last worked as a mail carrier for a school district in 2007 and then went to jail in 2007 and has not worked since (Exhibit 5F/2). Her arrest appears to be the reason she stopped working.

(AR 108.)

"An ALJ is required to consider work history when assessing credibility." *Matthews v. Berryhill*, 2017 WL 3383118, at *12 (E.D. Cal. Aug. 7, 2017) (citing 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96–7p, 1996 SSR LEXIS 4). "Evidence of a poor work history that suggests a claimant is not motivated to work

8

is a proper reason to discredit a claimant's testimony that he is unable to work." *Franz v. Colvin*, 91 F. Supp. 3d 1200, 1209 (D. Or. 2015) (citing *Thomas*, 278 F.3d at 959); *see also Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (ALJ "may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination").

Here, Plaintiff's work record reveals that she earned $5,565 in 2003; $9,246 in 2004; $6,253 in 2005; and $5,973 in 2006. (AR 288, 290-293.) The ALJ could properly discount Plaintiff's claim that she was unable to work by citing to evidence suggesting that Plaintiff was generally not motivated to work.

Plaintiff argues that the ALJ erred in concluding that she "did not work at her full capacity." (ECF No. 21 at 9.) According to Plaintiff: "Full capacity for a person who was a[n] on-call substitute teacher is not something that is up for the person to decide when she can work [or] not work." (ECF No. 21 at 9.) Plaintiff's argument that her poor work history could be explained by the difficulty obtaining work as an on-call substitute teacher is unavailing. The Court may not second-guess the ALJ's finding merely because the evidence may be susceptible of alternative interpretations. *See Matthews*, 2017 WL 3383118, at *12 ("While it is true that factor(s) other than a lack of propensity to work could account for Plaintiff's low earnings from 1997 to 2007, this Court may not 'second-guess' the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff.").

In addition, the ALJ properly considered evidence that Plaintiff lost her previous employment for reasons that were not related to her disability. Plaintiff testified that she worked at a school as a campus supervisor, a position that required her to be on her feet most of the time. She further testified that she stopped working in 2007 because she was arrested and incarcerated. When Plaintiff was released approximately two and a half weeks later, she was unable to resume work because the school "cut" her position. (AR 118-121.) Plaintiff's testimony that she ceased

working because her job was no longer available contradicts Plaintiff's claim of disability. Thus, the ALJ properly relied upon Plaintiff's work history in making an adverse credibility finding. *See, e.g., Drouin v. Sullivan*, 966 F.2d 1255, 1258–59 (9th Cir. 1992) (ALJ did not err by discounting claimant's credibility because, in part, claimant "did not lose her past two jobs because of pain"); *Caldwell v. Comm'r of Soc. Sec.*, 2016 WL 4041331, at *6 (E.D. Cal. July 26, 2016) (ALJ reasonably relied on claimant's work record in discounting her credibility where "there [was] evidence suggesting that plaintiff had stopped working for reasons not related to her impairments"); *Clark v. Colvin*, 2013 WL 6095842, at *3 (W.D. Wash. Nov. 20, 2013) (ALJ did not err in finding claimant's subjective complaints less credible based on claimant's work history where claimant's "job ended for economic reasons instead of impairment-related reasons"). This was an appropriate factor for the ALJ to consider in assessing Plaintiff's credibility. *See Carter v. Astrue*, 472 F. App'x 550, 552 (9th Cir. 2012) (the "internal contradiction" in claimant's assertion that he was fired due to racial issues and not due to his inability to perform his work was a legitimate reason to disbelieve his testimony); *Wells v. Comm'r of Soc. Sec.*, 2017 WL 3620054, at *8 (E.D. Cal. Aug. 23, 2017) (ALJ reasonably relied on claimant's poor work history where plaintiff argued that his low earnings were not due to a lack of motivation to work but rather were a result of economic factors, because plaintiff's proffered reasons for his lack of gainful employment were not related to his impairments).

Fourth, Plaintiff argues that the ALJ erred by relying upon her daily activities to discount her credibility. (ECF No. 21 at 7-8.) The ALJ stated:

> As mentioned earlier, the record reflects work activity after the alleged onset date. Although that activity did not constitute disqualifying substantial gainful activity, it does indicate that [Plaintiff]'s daily activities have, at least at times, been somewhat greater than [Plaintiff] has generally reported.

(AR 108.)

Plaintiff contends that the ALJ could not rely upon Plaintiff's childcare activities to discredit her subjective limitations without first developing the record to illuminate exactly what activities that childcare entailed. The ALJ, however, made a finding about Plaintiff's veracity as a result of her working past her alleged onset date. That finding is supported by the record, which confirms that in 2013 Plaintiff earned $9,395 in wages by providing childcare. (AR 128, 293.) In explaining these earnings, Plaintiff testified that she "just watched" her two granddaughters and would "take them and drop them off at school" (AR 128-129.) Plaintiff performed this work for the entire year. (AR 121.) It was not improper for the ALJ to consider evidence that Plaintiff was capable of working past her alleged onset date as a basis for doubting her veracity. *Carter*, 472 F. App'x at 552 ("the fact that Carter continued working past his alleged onset date forms a valid basis for doubting his veracity").

Finally, Plaintiff challenges the ALJ's consideration of the course of her treatment. (ECF No. 21 at 8.) The ALJ found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 108.) In particular, the ALJ noted that Plaintiff received little specialist care for any of her physical impairments and that she "neither sought nor obtained any regular and continuing mental health treatment from either a psychiatrist or psychologist." (AR 108.)

Generally, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). At the same time, an ALJ errs in relying on conservative treatment if "the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *see also Matamoros v. Colvin*, 2014 WL 1682062, at *4 (C.D. Cal. April 28, 2014) ("The ALJ cannot fault [the claimant] for failing to pursue

non-conservative treatment options if none exist.") (citation omitted). Even assuming the ALJ improperly characterized Plaintiff's treatment as conservative, any error was harmless in light of the other clear and convincing reasons provided in his decision. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (ALJ's error in relying on claimant's receipt of unemployment benefits and on relatively conservative pain treatment regime was harmless where ALJ provided other specific and legitimate reasons for finding claimant's testimony incredible).

For the foregoing reasons, the Court concludes that the ALJ did not err in evaluating Plaintiff's subjective testimony.

**ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 3/1/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE